# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **RACHEL HALLOWS SABBATS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23CV00326 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **WARDEN WHITE, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |
| ) | |

*Rachel Hallows Sabbats, Pro Se Plaintiff; Ann-Marie White Rene,* OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, *Richmond, Virginia, for Defendants.*

The plaintiff, Rachel Hallows Sabbats, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983.  She alleges that as a transgender female,[1] she is wrongfully identified as a male and housed in a male prison facility where she has been sexually harassed and was sexually assaulted.  The defendants have filed a Motion to Dismiss that I will address separately after Sabbats has had an opportunity to respond to their arguments.  Sabbats has also filed two motions seeking interlocutory injunctive relief to obtain a transfer, and the defendants have responded to these motions.  After review of the record, I conclude that Sabbats' motions must be denied.

---

[1] Sabbats uses female pronouns when referring to herself.

Sabbats filed this action in June 2023, suing the former director of the Virginia Department of Corrections (VDOC) and various officials at Red Onion State Prison (Red Onion), where she has been confined for over a year. In her Complaint, she contends that the defendants knew her transgender female status and placed her at risk of sexual harassment and assault in a male prison, but nevertheless, assigned her to the Protective Custody Unit (PCU) at Red Onion with other male inmates, some of whom are sexual predators. She alleges that in that unit, she has been sexually harassed and threatened with violence, incidents she was afraid to report to officials. Sabbats mentions that inmates verbally harass her when she showers. She also claims she was sexually assaulted in that unit in September 2022 and at other prisons in prior years.

Sabbats filed one motion for interlocutory relief with her Complaint in June 2023. This motion asserts that as a transgender inmate Sabbats is inappropriately confined in a male prison and asks for transfer to a women's prison or a prison that houses transgender inmates. In the second motion, filed in July 2023, Sabbats states concern over unidentified, future harm she may face as a transgender female at Red Onion. Her fears of these future harms appear based, in part, on her allegation that on June 25, 2023, officers forced her to stand outside of her cell during a search, clad only in her underwear.

The defendants responded to Sabbats' motions, providing affidavits from a sergeant in the Intelligence Department, J. Bentley, and Dr. M. Cary, Chief Psychiatrist. Resp. Opp'n Prelim. Inj. Attachs., Bentley Aff., ECF No. 16-1, and Cary Aff., ECF No. 16-2. Bentley states that Sabbats reported to officials that on September 4, 2022, Inmate L. Cameron bit Sabbats on the shoulder and grabbed Sabbats' breast. Officers responded to this information by ordering that both inmates be kept in their separate cells. Escort officers then removed Cameron and assigned him to a different housing pod. Officers provided Sabbats access to medical and mental health staff for assessment and treatment. Bentley states that now, Sabbats and Cameron do not have contact with one another at Red Onion. Bentley reports finding no other complaints from Sabbats about sexual assaults or incidents at Red Onion in September 2022.

Bentley indicates that at present, Sabbats is housed in the PCU at Red Onion in a single cell. The PCU houses inmates who need a secure and safe environment and provides more privileges that other general population inmates receive at Red Onion. In the PCU, Sabbats is offered in-pod and outside recreation, but is not required to participate. She can use a PCU shower designed for transgender inmates, with a raised door that covers a showering inmate's chest. When a transgender inmate is showering, all other inmates in the housing pod are locked in their cells.

Bentley also provides evidence that on June 25, 2023, Sabbats was housed in cell C-123 on the top tier. That day, two officers released top tier inmates for pod recreation and then began conducting "walk throughs" of the top tier cells. Bentley Aff. ¶ 10. When the officers opened the door to cell C-123, "Sabbats walked out of the cell wearing underwear and a shirt." *Id.* Bentley states, "It is assumed that an inmate will exit his/her cell in appropriate clothing, but Red Onion staff cannot use force to make this happen."[2] *Id.*

Dr. Cary states that the VDOC Gender Dysphoria Steering Committee (the Committee), comprised of health professionals and corrections officials, meets quarterly to review the situation of each transgender inmate in VDOC custody for safe and suitable housing. The Prison Rape Elimination Act (PREA) requires this case-by-case analysis. Housing assignment for a transgender inmate must take into consideration not only transgender status, but also the risk of sexual assault (as victim or perpetrator), criminal history (including violent or sex crimes), institutional adjustment, institutional needs and bed space, and personal safety for the inmate.

Dr. Cary indicates that the Committee has determined that housing Sabbats at a male facility is appropriate for several reasons. These reasons include: Sabbats' current sentence of 51 years in prison for object sexual penetration of a female

---

[2] Sabbats claims that if she had voluntarily exited her cell dressed as Bentley describes, she could have been charged with a disciplinary offense, such as indecent exposure. She received no such charge stemming from the incident.

spouse,[3] along with other violent offenses; disciplinary infractions Sabbats incurred in mid-2021 at Pocahontas State Correctional Center, namely, inciting to riot, rioting, or acting in a manner that disrupts the orderly operation of the institution, possession of contraband, and intentionally destroying, altering, damaging, or defacing state or any person's property;[4] and additional disciplinary infractions Sabbats incurred after a transfer in October 2021 to Sussex I State Prison, namely, simple assault upon a non-offender,[5] unauthorized use or abuse of mail or telephone,[6] refusal to submit to a drug test,[7] and possession of contraband. After the Sussex I charges, officials transferred Sabbats to Red Onion in June 2022. The Committee continues to monitor Sabbats. But given Sabbats' history of violence,

---

[3] Dr. Cary states that to the best of his knowledge, Sabbats was living and presenting as a male at the time of the object sexual penetration offense against a female spouse.

[4] Sabbats states that this charge arose from evidence that he had cut a sock to cover his male genitalia.

[5] Sabbats alleges that this charge stemmed from an incident when Sabbats tried to close a unit manager's door, the unit manager reached out to stop that action and touched Sabbats' breast, and Sabbats "responded with a wax off motion that removed [the officer's] hands" from her breast. Resp. 16, ECF No. 20.

[6] Sabbats asserts that this charge arose after Sabbats called the PREA hotline over 100 times to report documentation identifying her as a female and complaining that she should not be assigned to a male prison.

[7] Sabbats explains that she admitted to using drugs in this instance, so no drug test was necessary.

particularly sexual violence toward a female,[8] the Committee has determined that Sabbats is appropriately housed in a male prison facility at this time.

A party seeking interlocutory injunctive relief must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.* A preliminary injunction is "an extraordinary remedy" to be awarded only when the movant has demonstrated that "irreparable injury is *likely* in the absence of an injunction," not merely "based only on a possibility" that such harm will occur. *Id.* at 22. An inmate's constitutional rights must be evaluated in the context of his incarceration.

> The Supreme Court has long cautioned that courts are ill equipped to deal with the increasingly urgent problems of prison administration and, therefore, the court must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration.

*Greenhill v. Clarke*, No. 7:16CV00068, 2017 WL 9517164, at *3 (W.D. Va. Mar. 20, 2017) (internal quotation marks, citations and alterations omitted), *R. & R. adopted*, No. 7:16CV00068, 2017 WL 1929669 (W.D. Va. May 10, 2017), *aff'd*,

---

[8] Sabbats asserts that her criminal history includes only one crime of sexual violence against a female.

699 F. App'x 280 (4th Cir. 2017) (unpublished). The movant bears the burden of proof and persuasion on a motion for preliminary injunction. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).

Both of Sabbats' motions for preliminary injunction fail because she does not state facts in the motions or in her Complaint to show by "clear and convincing" evidence that she is likely to succeed on the merits of her underlying claims in this case. *Myclaex Corp. of Am. v. Pemco Corp.*, 159 F.2d 907, 912 (4th Cir. 1947). In fact, Sabbats does not refer in her motions to any of the claims against the individual defendants named in the lawsuit. Nor do her motions indicate any likelihood that she will succeed on showing personal liability under § 1983 as to any of those defendants. Furthermore, undisputed evidence in the record indicates that housing assignments for transgender female inmates in the custody of the VDOC are determined, after careful consideration of numerous factors, by the Committee and not by any of the individual defendants Sabbats has named. It is also undisputed that the Committee has decided that Sabbats is appropriately housed at a male prison given, among other things, Sabbats' past violent sex offense against a female spouse. The Committee will continue to monitor Sabbats' circumstances and adjustment and review her housing assignment every three months or so. Furthermore, it is undisputed that Red Onion provides specialized accommodations for transgender female inmates — hormone therapy, separate showers, female officers conducting

any searches of the person, and so on. On this record, I cannot find that Sabbats has established any likelihood of success on the merits of the underlying claims against the defendants.

Moreover, Sabbats has not stated facts showing a likelihood that she will suffer irreparable harm without court intervention. At the most, Sabbats asserts vaguely a possibility that male inmates will sexually assault or harass her at a male prison because she has experienced such events in the past at Red Onion and at other male prisons. A possibility of harm, however, is not sufficient. *Winter*, 555 U.S. at 21. Evidence of past harm is not dispositive on a question of whether irreparable future harm is probable. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017). Moreover, Sabbats states that she has not always reported such incidents to prison officials, who cannot take action to prevent conduct of which they have not been notified.

I also conclude that the two remaining factors of the *Winter* analysis, the balance of equities and the public interest, weigh heavily against granting interlocutory relief on Sabbats' behalf. The public interest and maintaining a balance of equities are best served when courts do not interfere with prison administrative decisions, based on the professional expertise of prison administrators. *Greenhill*, 2017 WL 9517164, at *3.

Finally, it is well established that an inmate is not entitled to interlocutory injunctive relief to obtain a desired transfer to another correctional facility. *Burton-Hypes v. Hamilton*, No. 7:22CV00513, 2023 WL 3853683, at *1 (W.D. Va. June 6, 2023). Simply put, an inmate has no right to be confined at a prison of her choice. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

For the stated reasons, I conclude that Sabbats is not entitled to the interlocutory injunctive relief that she seeks. Therefore, I will deny her motions.

For the reasons stated, it is **ORDERED** that the motions seeking interlocutory relief, ECF Nos. 2 and 8, are DENIED.

ENTER: November 14, 2023

/s/ JAMES P. JONES
Senior United States District Judge